# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

| | |
|---|---|
| SREDRICK JONES, as the surviving spouse of Brandi Nicole Griffin Jones, | |
| Plaintiff, | CIVIL ACTION NO.: 5:17-cv-77 |
| v. | |
| WALLACE STEVE ANDERSON, D.O.; TAMMY NICHOLE BASS, LPN; SOUTH GEORGIA CORRECTIONAL MEDICINE, LLC; KIM PHILLIPS; and DOYLE WOOTEN, | |
| Defendants. | |

## O R D E R

Presently before the Court is Defendants Doyle Wooten and Kim Phillips' ("Defendants") Motion to Strike the Opinions and Preclude the Testimony of Plaintiff's Expert, Michael A. Berg. (Doc. 69.) Plaintiff filed a Response, (doc. 71), Defendants filed a Reply, (doc. 78), and Plaintiff filed a Surreply, (doc. 85). For the reasons and in the manner set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

Mr. Berg's Expert Report exemplifies the principle that a witness may be a well-qualified expert but still not provide reliable expert testimony. As explained below, Plaintiff has failed to meet his burden to lay the foundation for the admission of the overwhelming majority of Mr. Berg's opinions. Plaintiff has failed to clarify what opinions Mr. Berg intends to offer, much less establish that the opinions fall within Mr. Berg's area of expertise, are the product of reliable principles and methods, are based in reliable facts or data, and will assist the jury at the trial of this case.

Despite these general deficiencies, Mr. Berg will be permitted to provide limited testimony regarding detainee classification. He may opine that "acceptable correctional classification systems incorporate all known facts regarding a detainee such as medical, criminal and behavioral (past and present), to formulate the most applicable housing plan possible to ensure the safety of the inmate and all others concerned." (Doc. 71-1, p. 29.) Mr. Berg may also opine that:

> Classification must be the center point of all inmate activities and status decisions. Trained classification personnel ensure that all pertinent information is consolidated into a totally encompassing custody plan. This information is acquired from intake information, medical screening, criminal and medical histories and security/observation needs required. As new information is accumulated and received pertaining to an inmate, it must be proved to the Classification Unit prior to anything happening with the inmate involved.

(Id. at p. 38.) Further, Mr. Berg may testify that "no classification process was ever incorporated in the Griffin Jones incarceration plan." (Id. at p. 29.) For the reasons explained below, Mr. Berg's testimony will be strictly limited to these opinions alone, and the Court strikes the remainder of his opinions. Plaintiff will not be permitted to introduce or otherwise rely upon any other opinions from Mr. Berg.

## BACKGROUND

### I. Plaintiff's Complaint

This case arises from Mrs. Brandi Jones' detention at the Coffee County Jail from July 8 through July 11, 2015, as an Atkinson County pre-trial detainee. Defendant Wooten is the Sheriff of Coffee County, and Defendant Phillips is the Jail Administrator for Coffee County. Plaintiff asserts Mrs. Jones suffered from mental health issues and that she was under the care of a physician who prescribed her several medications prior to her detention. (Doc. 11, pp. 8–9.) According to Plaintiff, Mrs. Jones did not receive any of her medications while she was housed

at the Coffee County Jail. (Id. at p. 12.) As a result, Plaintiff maintains Mrs. Jones began exhibiting "obvious manifestations of withdrawal from her prescription medications[,]" yet staff at the Coffee County Jail failed to address her symptoms. (Id.) Mrs. Jones began having "seizure-like activity in her cell and lost consciousness[]" on July 11, 2015, and she was taken to Coffee Regional Medical Center. (Id.) Mrs. Jones was pronounced dead on July 15, 2015. (Id. at p. 13.)

Plaintiff Sredrick Jones, the surviving spouse of Mrs. Jones, originally filed a cause of action in the Coffee County State Court, claiming that Defendants caused or contributed to his wife's death. (Doc. 1-2.) Defendants filed a Notice of Removal on June 1, 2017. (Doc. 1.) Though Plaintiff originally named the Coffee County Sheriff's Office as a Defendant, the Sheriff's Office moved for dismissal of all claims against it; Plaintiff did not oppose that Motion. (Docs. 25, 29.) The Court granted that Motion, holding that the Sheriff's Office is not a legal entity subject to suit.[1]

Plaintiff filed an Amended Complaint on June 7, 2017. (Doc. 11.) On August 8, 2017, the Court issued a Scheduling Order that limited the first phase of discovery to "to those issues necessary to address the Coffee County Defendants' defense of qualified immunity." (Doc. 34, p. 2.) Among other things, the Scheduling Order required Plaintiff to serve all expert witness reports regarding the first phase of discovery by September 8, 2017, and Defendants to serve all expert reports for the first phase by October 9, 2017. (Id. at p. 3.) The parties were to complete all expert depositions regarding the first phase of discovery by December 15, 2017. (Id.)

---

[1] Plaintiff named several more individuals and entities as Defendants, but those Defendants not listed in the above caption of this case have been dismissed. (Docs. 31, 33, 43, 48, 50.) In addition, not all Defendants were included in the Notice of Removal, and those who were not included consented to removal on June 16, 2017. (Doc. 17.)

## II.    Mr. Berg's Expert Report

On September 4, 2017, Mr. Berg penned a report entitled "Preliminary Expert Report of Michael A. Berg." (Doc. 71-1, pp. 14–62.) In his Report, Mr. Berg states that he is "an independent consultant in the field of corrections with over forty-four years of experience in criminal justice management, primarily in the area of corrections." (Id. at p. 14.) He details his 25-year work history with the Office of the Sheriff, Jacksonville, Florida, his over 12-year career with the Florida Department of Corrections, and his past work as an expert witness. (Id. at pp. 14–15.) Mr. Berg's more than forty-four (44) years' experience primarily relates to the field of corrections and includes "direct experience with management and security." (Id. at p. 14.) Mr. Berg has experience with administrative and operational management of jails and prisons of all sizes, including correctional and police-related administrative issues from a person's arrest to his or her release. (Id. at p. 15.) Mr. Berg's experience also includes correctional operational policy and procedure development. Additionally, Mr. Berg has been qualified as an expert witness in the corrections field on nearly forty (40) occasions and has provided testimony relating to this field, particularly as to wrongful death, classification, housing conditions, and private-for-profit contracts for medical and mental health services. (Id. & at pp. 56–61.) In his Report, Mr. Berg also provides a list of materials that he reviewed in formulating his opinions in this case, but he does not provide any description of those materials. (Id. at pp. 16–27.)

Mr. Berg's Report next includes a Section entitled "Opinion" in which he offers broad and sweeping accusations against the Coffee County Sheriff's Office and South Georgia Correctional Medicine. (Id. at pp. 27–41.) Mr. Berg does not offer his conclusions in any organized format, and it is difficult to follow what opinions he intends to offer. However, the Court has endeavored to decipher his Report, and it appears he offers accusations in five areas.

First, Mr. Berg repeatedly opines that Mrs. Jones' death was caused by various acts or omissions by the Coffee County Sheriff's Office and South Georgia Correctional Medicine caused. Second, Mr. Berg frequently offers legal conclusions, including statements that the Coffee County Sheriff's Office and South Georgia Correctional Medicine violated constitutional obligations owed to Mrs. Jones. Third, Mr. Berg opines at various points that aspects of the care and supervision provided to Mrs. Jones (or alleged lack thereof) violated unwritten standards of the corrections industry. Fourth, Mr. Berg opines that the Coffee County Sheriff's Office and South Georgia Correctional Medicine violated a number of written industry standards in the classification, housing, and medical care provided to Mrs. Jones. Fifth, Mr. Berg faults unnamed members of the administration of the Sheriff's Office and South Georgia Correctional Medicine for failures in supervision, training, and policy implementation.

As noted above, Mr. Berg labels his Report a "Preliminary Report." (Id. at p. 14.) He states:

> Due to it being early in the discovery phase of the plaintiff's case regarding the Brandi Nicole Griffin Jones matter, I am certain that the negligence and deliberate indifference reported here will become even more apparent as additional material is produced. In that factual material is limited at this time, it is hoped that additional material will be produced in the near future.

(Id. at p. 29.) He repeatedly notes that he had not received, much less reviewed, any policies or procedures from the Sheriff's Office or South Georgia Correctional Medicine. (Id. at p. 36 ("[T]o date, no Coffee County or South Georgia Correctional Medicine Policy and Procedures have been received through discovery . . . ."); (Id. at p. 38 ("As a note—it must be stated again that neither Coffee County Sheriff's Office nor South Georgia Correctional Medicine has produced any policies and procedures regarding their operations."); (Id. at p. 40 ("Clear and concise policy and procedures, although not provided by either the County or the health care

provider . . . .").  Mr. Berg also states he had not received or reviewed any "cell observation logs

pertaining to the incarceration of Ms. Griffin Jones."  (<u>Id.</u> at p. 36.)

### III.    Defendants' Motion to Strike

On February 1, 2018, Defendants filed their Motion to Strike Mr. Berg's opinions and

preclude him from testifying in this action.  (Doc. 69.)  Defendants request that the Court

exclude Mr. Berg's testimony and opinions in their entirety.  (<u>Id.</u>)  Defendants argue that Mr.

Berg fails to explain how his experience as a correctional officer and administrator informed his

opinions.  (<u>Id.</u> at p. 7.)  They also argue that Mr. Berg lacks the qualifications to provide the

medical opinions included in his Report.  (<u>Id.</u> at p. 8 ("Berg is simply not qualified to discuss

Mrs. Jones' alleged medical diagnoses, nor do his qualifications provide a basis for him to opine

on the screening documents or processes used by Southern Correctional Medicine in determining

Mrs. Jones' medical needs.").)  Additionally, Defendants argue that Mr. Berg bases his opinions

on the premise that Mrs. Jones was being treated for "'drug dependence withdrawal, psychiatric

disorder/s and manic depression'", and there is no support in the record for this premise.  (<u>Id.</u>

(quoting Berg Report).)  Defendants contend both of these alleged flaws (Mr. Berg's lack of

medical qualifications and his faulty premise) combine to plague his opinion that Mrs. Jones'

medical conditions "'would call for special correctional housing that required constant or very

frequent medical and/or security observation.'"  (<u>Id.</u> (quoting Berg Report).)  Additionally,

Defendants argue that Mr. Berg has no qualification or basis for opining that Mrs. Jones' death

resulted from the lack of special housing and medical or security observation.  (<u>Id.</u> at p. 9.)

Defendants next attack the reliability of Mr. Berg's methodology.  (<u>Id.</u> at pp. 9–12.)

They maintain that an expert cannot testify as to whether a particular defendant was deliberately

indifferent and that the underlying unreliability of Mr. Berg's methodology makes his deliberate

indifference testimony particularly troubling. (Id. at pp. 9–10.) Further, Defendants contend that, while Mr. Berg describes the Jail's policies, training, and supervision as deficient, he does not identify these deficiencies with any specificity. (Id. at p. 10.) Defendants also argue Mr. Berg's opinions that the Coffee County Sheriff and South Georgia Correctional Medicine violated certain policies and procedures should be stricken as unreliable, because he simply cites to the tables of contents of the policies without explaining how he applied the policies to the facts of this case. (Id. at pp. 10–11.) Additionally, Defendants argue Mr. Berg's opinions are not grounded in any accepted premise but rather in *ipse dixit* reasoning. (Id. at pp. 11–12.)

Further, Defendants contend that Berg's opinions are not helpful to the jury, as they are akin to a lawyer's closing arguments and convey matters within the understanding of the average lay person. (Id. at pp. 12–13.) Finally, they maintain that Mr. Berg's numerous opinions regarding the applicable legal standards would not only be unhelpful to the jury but could also mislead and confuse the jury. (Id. at pp. 13–14.)

On February 14, 2018, Plaintiff filed his Response in opposition to the Defendants' Motion to Strike. (Doc. 71.) Plaintiff argues that Mr. Berg is "imminently [sic] qualified" to testify competently in the field of corrections due to his "lengthy twenty-five-year (25) career as a corrections officer for the Office of Sheriff, Jacksonville, Florida, after which he served the Florida Department of Corrections as senior adviser overseeing all department education and training as well as all curriculum and policy development and implementation." (Id. at p. 4.) In response to Defendants' contention that Mr. Berg's methodology is unreliable, Plaintiff asserts that Mr. Berg "conducted an extensive review of the records in this matter, including but not limited to reports, policies and procedures, and applicable case specific standards, and then formulated his opinions contained in his report based on his knowledge, training and

experience." (Id. at p. 5.) Plaintiff avers that Mr. Berg is not offering opinions as a medical expert but rather as an expert in the "applicable state and national standards imposed on correctional facilities." (Id. at p. 6.) Lastly, Plaintiff maintains that Mr. Berg's testimony will assist the jury "in interpreting the significance of the evidence and the systems, policies, and training at the Coffee County Jail." (Id. at p. 7.)

Defendants filed a Reply to Plaintiff's Response on February 28, 2018. (Doc. 78.) Therein, Defendants argue that Plaintiff, as the proponent of Mr. Berg's testimony, has failed to address the deficiencies noted in their Motion to Strike. (Id.) Generally, they contend Plaintiff's sole focus on Mr. Berg's experience fails to explain how he applied that experience to the facts of this case. (Id.)

Plaintiff then filed a Surreply to Defendant's Reply on March 12, 2018. (Doc. 85.) Therein, Plaintiff stipulates that Mr. Berg "will not render opinions or give testimony as to medical issues that require specialized medical knowledge and expertise. Nor will Mr. Berg render opinions or give testimony regarding legal implications of conduct such as 'that Defendants were deliberately indifferent.'" (Id. at p. 3.) However, Plaintiff opposes Defendants' contentions that Mr. Berg's Report lacks analysis, that his opinions are deficient because he did not review the Coffee County Jail policies and procedures, and that his opinions lack reliability. (Id. at pp. 3–4.)

## STANDARD OF REVIEW

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the United States Supreme Court interpreted Federal Rule of Evidence 702 ("Rule 702"), which governs expert testimony. The Supreme Court stated that Rule 702 "compels the district courts to perform the

critical 'gatekeeping' function concerning the admissibility of expert *scientific* evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (emphasis in original) (citing Daubert, 509 U.S. at 589 n.7, 597). The Supreme Court later held that "Daubert's general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702). Having adopted these decisions, amended Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court of Appeals for the Eleventh Circuit has set forth a rigorous three-prong inquiry encompassing the requirements of Daubert and its progeny and Rule 702. Under the three-prong inquiry, a court determining the admissibility of expert testimony must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (citations omitted). The proponent of an expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. Daubert, 509 U.S. at 592, n.10; see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1107 (11th Cir. 2005) ("'The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and

admissibility must be shown by a preponderance of the evidence.'") (quoting <u>Allison v. McGhan</u> <u>Med. Corp.</u>, 184 F.3d 1300, 1306 (11th Cir. 1999)). The ultimate objective of a court's <u>Daubert</u> gatekeeping function is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." <u>Kumho Tire</u>, 526 U.S. at 152.

To satisfy the qualification prong, experts must have "specialized knowledge" regarding their proposed area of testimony. Fed. R. Evid. 702(a). However, an expert need not have formal education in order to testify. Rather, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." <u>Frazier</u>, 387 F.3d at 1260–61; <u>see also</u> Fed. R. Evid. 702 (A witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]"). When assessing qualification, a court must determine "whether the subject matter of the witness's proposed testimony is sufficiently within the expert's expertise." <u>In re Mentor</u> <u>Corp. ObTape Transobturator Sling Prods. Liab. Litig.</u>, 711 F. Supp. 2d 1348, 1367 (M.D. Ga. 2010) (internal citation omitted).

However, "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable *any* conceivable opinion the expert may express." <u>Frazier</u>, 387 F.3d at 1261 (emphasis in original). Put another way, "one may be considered an expert but still offer unreliable testimony." <u>Quiet</u> <u>Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.</u>, 326 F.3d 1333, 1342 (11th Cir. 2003) (internal citations omitted). Moreover, "nothing in either <u>Daubert</u> or the Federal Rules of Evidence

requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

Consequently, the reliability "criterion remains a discrete, independent, and important requirement for admissibility." Frazier, 387 F.3d at 1261. Under Federal Rule of Evidence 702, the proponent of the expert testimony must establish that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Moreover, the facts or data underlying the expert's opinion must be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703.

In Daubert, the Supreme Court "set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." United States v. Brown, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors or observations inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." Id. (citation omitted). "Sometimes the specific Daubert factors will aid in determining reliability; sometimes other questions may be more useful." Frazier, 387 F.3d at 1262. Particularly in cases of non-scientific experts, "the relevant reliability concerns may focus upon personal knowledge or experience." Kumho Tire, 526 U.S. at 150. "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the

opinion, and how that experience is reliably applied to the facts.'" <u>Frazier</u>, 387 F.3d at 1261 (emphasis in original) (quoting Fed. R. Civ. P. 702 Advisory Committee's Note to 2000 Amendments).

Lastly, expert opinion testimony must assist the trier of fact. <u>Id.</u> "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." <u>Id.</u> (citation omitted). Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. <u>Estate of Tessier</u>, 402 F.3d at 1111.

## DISCUSSION

### I. Whether Plaintiff Generally Satisfies his Burden as the Proponent of Mr. Berg's Opinions

As the proponent of Mr. Berg's opinions, Plaintiff shoulders the burden of satisfying all prerequisites of admissibility as to each of those opinions. <u>Daubert</u>, 509 U.S. at 592, n.10; <u>Estate of Tessier</u>, 402 F.3d at 1107. Plaintiff must make those showings "by a preponderance of the evidence." <u>Allison</u>, 184 F.3d at 1306 (internal citation omitted). "Where the burden has not been satisfied, [Rule 702] precludes expert testimony." <u>Siharath v. Sandoz Pharm. Corp.</u>, 131 F. Supp. 2d 1347, 1351 (N.D. Ga. 2001), <i>aff'd sub nom.</i>, <u>Rider v. Sandoz Pharm. Corp.</u>, 295 F.3d 1194 (11th Cir. 2002). This burden cannot be satisfied by conclusory arguments and should not be taken lightly.

In Section II below, the Court delves into each of Mr. Berg's areas of opinion (at least as best the Court can discern them) and assesses whether Plaintiff has laid the requisite foundation to introduce those opinions specifically. However, at the outset, the Courts holds that, despite filing two briefs in opposition to Defendants' Motion, Plaintiff generally fails to carry his burden

to explain what Mr. Berg's proffered opinions will be and why those opinions should be admitted.

Additionally, Plaintiff has not delineated what opinions Mr. Berg will actually offer. Mr. Berg's Report is far reaching and replete with legal and medical conclusions and allegations. He makes many conclusory statements, and it is not clear whether many of those statements are opinions based on his experience, factual allegations reflected elsewhere in the record, or just bald conclusions. (See Doc. 71-1.) In fact, Defendants point out the confusing nature of Mr. Berg's Report in their Motion to Strike. (Doc. 69, p. 6 ("[I]t is unclear from the report the precise opinions Plaintiff's expert is offering as it rambles on using primarily conclusory, redundant language[.]"); (Id. at p. 11 ("Berg's opinions are extremely vague and unspecific, generally referencing some of the allegations of this case and just simply reaching conclusions which support plaintiff's position . . . .").

Despite Defendants' challenge, Plaintiff does nothing to clear up the confusion. In his Response and Surreply, Plaintiff does not quote any proffered opinions, list the opinions that Mr. Berg will offer, or otherwise delineate those opinions. The most Plaintiff offers is a general statement of the areas on which Mr. Berg will not testify. In his Surreply, Plaintiff stipulates that Mr. Berg will not opine "as to medical issues that require specialized medical knowledge and expertise" and will "not render opinions or give testimony regarding legal implications of conduct." (Doc. 85, p. 3.) However, Plaintiff fails to explain what opinions remain in light of this stipulation or otherwise differentiate between those opinions Mr. Berg intends to offer and those he does not. Where Plaintiff has failed to clearly state what opinions Mr. Berg will offer, he obviously has not carried the burden to lay the proper foundation for admitting those opinions, whatever they may be.

Not only has Plaintiff failed to delineate what opinions Mr. Berg will offer, he has generally failed to meet his "substantial burden" of establishing the admissibility of Mr. Berg's opinions. See Estate of Tessier, 402 F.3d at 1113. Defendants challenge Mr. Berg's proffered testimony on numerous grounds and attack the lack of analysis in his Report in detail. While Plaintiff deems this challenge "absurd on its face," (doc. 85, p. 3), he does nothing to demonstrate this supposed absurdity. Rather, Plaintiff focuses nearly exclusively on Mr. Berg's qualifications. Indeed, as Plaintiff emphasizes, Mr. Berg has more than forty-four (44) years' "experience in criminal justice, primarily in the area of corrections[,]" including "direct experience with management and security" with the Jacksonville, Florida, Department of Corrections and the Florida Department of Corrections. (Doc. 71-1, p. 14.) Plaintiff states that Mr. Berg will testify "as one who has expert knowledge of the applicable state and national standards imposed on correctional facilities such as the Coffee County Jail." (Doc. 85, p. 4.) However, Plaintiff has failed to demonstrate that many of Mr. Berg's opinions fall within this generalized description of Mr. Berg's area of expertise. For example, while Plaintiff now stipulates that Mr. Berg will not offer any testimony requiring medical expertise, many of Mr. Berg's opinions involve questions of medical judgment.

Plaintiff's effort to demonstrate that Mr. Berg's opinions are the product of a reliable methodology is even more lacking than his effort as to qualification. Plaintiff does not offer any supporting materials for Mr. Berg's opinions, such as an affidavit, a supplemental report, materials that he reviewed or relied upon, or any materials from the record.[2] Instead, Plaintiff chooses to rely upon the Report itself. Yet, Plaintiff only makes one specific citation to the

---

[2] Plaintiff did attach to his Response the Coffee County Coroner's Report of the autopsy of Mrs. Jones, (doc. 71-1, pp. 2–6), as well as sections of the Coffee County Jail Policy and Procedures Manual, (id. at pp. 8–12). Though Plaintiff cites these materials in his statement of facts, Plaintiff does not explain how these materials played any role in Mr. Berg's analysis. Indeed, Mr. Berg stated in his Report that he had not received or reviewed any of the Coffee County Sheriff Office's policies or procedures. (Id. at p. 36.)

Report in his Response. While Plaintiff relies heavily upon Mr. Berg's significant experience working in and supervising correctional facilities, he fails to adequately connect Mr. Berg's qualifications with the opinions he offers in this case. "[T]the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." Frazier, 387 F.3d at 1261. Further, [t]he trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Id. (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments); see also Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1316 (9th Cir. 1995) (on remand) (observing that the gatekeeping role requires a district court to make a reliability inquiry, and that "the expert's bald assurance of validity is not enough"). "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." Frazier, 387 F.3d at 1261.

Neither Plaintiff nor Mr. Berg "explain how [Mr. Berg's] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments. Plaintiff says that Mr. Berg explained all of these things. (Doc. 71, p. 6 ("Mr. Berg explains how his experience leads to the conclusions reached, why that experience is a sufficient basis for the opinion[s], and how that experience is reliably applied to the facts thus meeting the requirements in the advisory opinion notes contained in Fed. R. Evidence 702.") However, tellingly and typically, Plaintiff provides no support whatsoever for this conclusory statement. He does not quote Mr. Berg's supposed explanation, summarize it, or even point to where in his Report Mr. Berg made the explanation. Plaintiff's "sparse treatment of this issue

alone justifies excluding [Mr. Berg's] opinions." <u>Varlen Corp. v. Liberty Mut. Ins. Co.</u>, No. 13-CV-05463, 2017 WL 4278787, at \*7 (N.D. Ill. Sept. 25, 2017) (excluding party's expert where party set forth <u>Daubert</u> factors in its brief but did "not discuss them in detail or connect any of them to particular evidence or testimony" and attempted to support expert's opinion "with only general references to the [expert's] report, the materials he consulted, and his deposition."). Moreover, having reviewed Mr. Berg's Report, the Court cannot garner where he made the explanation Plaintiff attributes to him. Regardless of the depth of Mr. Berg's experience, Plaintiff has failed to demonstrate that Mr. Berg applied his experience to the facts of this case and used that experience to form the opinions he espouses. <u>See</u> <u>Cox v. Glanz</u>, No. 11-CV-457-JED-FHM, 2014 WL 916644, at \*3 (N.D. Okla. Mar. 10, 2014) (excluding defendant's corrections expert with experience similar to Mr. Berg because the expert did "not explain the process by which he relate[d] his experience to the facts at hand in order to reach that opinion").

Plaintiff's showing as to reliability is also plagued by his failure to show that Mr. Berg formulated his opinions after reviewing sufficient facts and data. Fed. R. Evidence 702(b). Plaintiff cites Mr. Berg's entire "Opinion" Section for the conclusion that "Mr. Berg, prior to submitting his report, conducted an extensive review of the records in this matter, including but not limited to reports, policies and procedures, and applicable case specific standards, and then formulated his opinions contained in his report based on his knowledge, training, and experience." (Doc. 71, p. 5.) However, Plaintiff offers no further elaboration whatsoever for this conclusory statement and no further explanation of the information Mr. Berg reviewed.

Mr. Berg only provides minimally better clues about what information he reviewed and how that review helped form his opinions. At the beginning of his Report, Mr. Berg lists a number of "case specific materials" he reviewed. (Doc. 71-1, pp. 16–17.) However, the

remainder of his Report, including the "Opinion" Section, is devoid of any description of these materials, citation to these materials, or explanation of how the materials support his conclusions. (See id. at pp. 27–41.)  Plaintiff cannot establish the reliability of an expert's opinions by simply referring to a general list of unexplained materials the expert reviewed.  Plaintiff should have at least described the materials, summarized the facts Mr. Berg obtained from the materials, and explained how those facts helped form Mr. Berg's opinions.  Cf. Henderson v. Glanz, No. 12-CV-68-JED-FHM, 2014 WL 2761206, at *3 (N.D. Okla. June 18, 2014) (denying Daubert challenge to corrections expert where expert provided, among other things, a list of materials he reviewed and "a synopsis of the facts he has gleaned from those materials").

Mr. Berg's Report itself exposes the insufficiency of the facts and data underlying his opinions.  As noted above, Mr. Berg labels his Report a "Preliminary Report." (Doc. 71-1, p. 14.) He states that the case is "early in the discovery phase," "factual material is limited at this time," and "it is hoped that additional material will be produced in the near future." (Id. at p. 29.)  He notes that he has not reviewed any policies or procedures of the Coffee County Sheriff's Office or "cell observation logs." (Id. at pp. 36, 38, 40.)  Despite Mr. Berg's acknowledgement that he only reviewed "limited" materials, it does not appear that he ever expanded that review.  He issued his Report four (4) days before Plaintiff's expert report deadline, and he has not supplemented it.  Moreover, Mr. Berg's Report "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them . . . ." Fed. R. Civ. P. 26(a)(2)(B) (emphasis supplied).  Mr. Berg's Report contains no such facts or data.

Additionally, Plaintiff has generally failed to explain how Mr. Berg's testimony will help the jury "understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony assists the trier of fact if it concerns matters that are "beyond the understanding and experience of the average [person]." United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262–63. Because of the powerful and potentially misleading effect of expert evidence, Daubert, 509 U.S. at 595, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403. Exclusion of expert testimony under Rule 403 is appropriate if the probative value of the testimony is substantially outweighed by its potential to confuse or mislead the jury, Rouco, 765 F.2d at 995, or if the expert testimony is cumulative or needlessly time consuming. See, e.g., Hull v. Merck & Co., Inc., 758 F.2d 1474, 1477 (11th Cir. 1985) (per curiam) (finding that admission of speculative and "potentially confusing testimony is at odds with the purposes of expert testimony as envisioned in Fed. R. Evid. 702"); see also United States v. Stevens, 935 F.2d 1380, 1399 (3d Cir. 1991) (finding expert testimony properly excluded because its probative value was outweighed by concerns of "undue delay, waste of time, or needless presentation of cumulative evidence"). Indeed, "the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." Daubert, 509 U.S. at 595 (internal citation and punctuation omitted); see also Salem v. U.S. Lines Co., 370 U.S. 31, 35 (1962). "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." Frazier, 387 F.3d at 1263. "Thus, while '[a]n expert may testify as to his opinion on an ultimate

issue of fact[,] . . . [a]n expert may not . . . merely tell the jury what result to reach.'" <u>Addison v. Arnett</u>, Civil Action No.: 2:13-cv-71, 2016 WL 1441803, at *3 (S.D. Ga. Apr. 12, 2016) (quoting <u>Montgomery v. Aetna Cas. & Sur. Co.</u>, 898 F.2d 1537, 1541 (11th Cir. 1990)). "Similarly, an expert 'may not testify to the legal implications of conduct; the court must be the jury's only source of law.'" <u>Id.</u> (quoting <u>Montgomery</u>, 898 F.2d at 1541).

Plaintiff only makes a brief conclusory argument on this issue. He argues that, "[g]iven Mr. Berg's extensive experience and knowledge in the field of corrections, and the corresponding standards, his expert opinion is necessary to assist the jury in interpreting the significance of the evidence and the systems, policies, and training at the Coffee County Jail." (Doc. 71, p. 7.) Plaintiff implies that Mr. Berg's testimony will help the jury understand "the state and national standards regarding the safe operation of a correctional facility, as well as the requirements for training personnel in the recognition and treatment of withdrawal syndrome." (<u>Id.</u>) However, Plaintiff does not even explain what element or elements of his claim Mr. Berg's testimony will help him establish. For example, he makes no effort to describe why the jury will need to understand the "state and national standards regarding the safe operation of a correctional facility", much less how Mr. Berg's testimony will help them reach that understanding.

Furthermore, Mr. Berg repeatedly offers conclusions that the Court would expect lawyers to argue in closing arguments and would not allow an expert to espouse from the witness stand. <u>Frazier</u>, 387 F.3d at 1262–63. He frequently makes sweeping allegations that are short on facts and long on legal rhetoric. For instance, Mr. Berg alleges "Coffee County Officials and their health care provider had a constitutional mandate to protect Brandi Griffin Jones and provide her with care, custody and control that was free from any form of cruel and unusual punishment; they did not!" (Doc. 71-1, p. 37.) Mr. Berg's Report is replete with hyperbole that would serve

only to inflame the jury, as well as legal and medical opinions that he has no qualifications to provide. Additionally, Mr. Berg's frequent observations and opinions that certain events were obvious, clear, or apparent would be confusing—if not superfluous—to a jury. As an example, Mr. Berg states, "As Brandi Nicole Griffin Jones is no longer living, little, if any additional factual support is actually required here." (Doc. 71-1, p. 35.)

The potential for Mr. Berg's opinions to confuse the jury is increased by the fact that he frequently levies opinions against "the Coffee County Sheriff's Office" or "Coffee County."[3] (See, e.g., Doc. 71-1, p. 32 ("Coffee County demonstrated failures with the following core standards[.]"); (Id. at p. 36 ("Coffee County Sheriff's Office failed to properly manage the health care provided to the inmate population entrusted in their care."); (Id. at p. 40 ("Brandi Nicole Griffin Jones's guaranteed Constitutional rights were flagrantly violated by the Coffee County Sheriff's Office . . . ."). However, as the Court explained in its November 17, 2017, Order, the Coffee County Sheriff's Office is not an entity subject to suit, and thus, is not a proper Defendant in this case.[4] (Doc. 33.) Plaintiff has not explained how Mr. Berg's accusations against entities that are not subject to suit will assist the jury in assessing the liability of the actual Defendants in this case. Further, if Mr. Berg were to testify that the Coffee County Sheriff's Office committed certain failures, the individual Defendants who work for the Sheriff's Office could be unfairly painted with that same broad brush without proof of their personal involvement in the alleged violation. Generally, Mr. Berg's accusatory "opinions" would serve to confuse and inflame the jury and offer nothing more than what Plaintiff's counsel can argue. Particularly given the

---

[3] Mr. Berg does not name, much less specifically opine about, any actual Defendants other than Nurse Bass.

[4] Plaintiff did not oppose the Motion to Dismiss the Coffee County Sheriff's Office from this lawsuit. (Doc. 29.)

"talismanic significance" jurors give expert testimony, the Court must exclude the overwhelming majority of Mr. Berg's opinions to prevent this danger and undue prejudice.

In sum, despite having filed two briefs, Plaintiff has failed to make the specific showings necessary to lay the requisite foundation for Mr. Berg's expert opinions. The Court is left with Mr. Berg's Report and its conclusory opinions, many of which Plaintiff appears to have disavowed. "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." Estate of Tessier, 402 F.3d at 1113. Plaintiff baldly states that Mr. Berg connected his experience to his opinions, that he conducted a reliable inquiry, and that his opinions will assist the trier of fact. However, Plaintiff has not provided any support for these conclusory arguments. The *ipse dixit* of the lawyer is no better than the *ipse dixit* of the expert in establishing the foundation for admissibility of expert testimony.

Plaintiff's failure to lay a proper foundation for Mr. Berg's opinion may be due to Plaintiff's apparent misunderstanding of the burden during a Daubert inquiry. In both his Response and his Surreply, Plaintiff stresses, "Defendants failed to disclose any defense experts, and also failed to request any discovery depositions of Plaintiffs experts, with that deadline expiring December 15, 2017." (Doc. 71, p. 3; Doc. 85, p. 2 (emphasis in the original).) Plaintiff apparently operates under the mistaken impression that Defendants were required to obtain an expert opinion contradicting Mr. Berg's opinion or some deposition testimony regarding Mr. Berg's methodology. However, Defendants bear no such burden. Moreover, it is not the Court's burden to sift through the record and cobble together support for Mr. Berg's opinions. Estate of Tessier, 402 F.3d at 1113 ("Again, we stress that it was [the proponent of the expert's] burden— not that of the trial court—to lay the foundation for admission of [the expert's] testimony.");

*see also* United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal quotation marks omitted). Rather, Plaintiff alone shoulders the "substantial burden" to lay the proper foundation for the admission of Mr. Berg's opinions. Except as specifically noted below, he has failed to do so.

For all of these reasons and those laid out below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Strike. Except as specifically detailed below, Plaintiff will not be allowed to proffer or rely upon Mr. Berg's opinions or testimony.

## II.    Whether Plaintiff Carried his Burden as to Mr. Berg's Specific Opinions

As explained above, Plaintiff has not clearly delineated what opinions Mr. Berg will offer, and Plaintiff generally failed to lay the proper foundation for the admission of Mr. Berg's opinions, whatever they may be. Nonetheless, the Court has reviewed Mr. Berg's Report in an attempt to decipher his opinions and to determine if there are any specific opinions that rest on an adequate foundation. However, make no mistake; Plaintiff solely shoulders the burden for establishing admissibility, and he has failed to carry it. Thus, if the Court does not glean from the Report some specific supportable opinion that Mr. Berg intends to offer, that error rests with Plaintiff.

### A.    Mr. Berg's Opinions Regarding Causation

Throughout his Report, Mr. Berg repeatedly opines on the cause of Mrs. Jones' death. For example, after stating that Mrs. Jones should have received "special correctional housing," Mr. Berg states, "This did not happen, and as a result Brandi Nicole Griffin Jones tragically

died." (Doc. 71-1, p. 28); (Id. ("A result of this tragic failure and very deliberate indifference is that Ms. Griffin Jones was exposed to cruel and unusual punishment and conditions that ultimately caused her death."); (Id. at p. 29 ("Here again, a dreadful failure that created the events that lead to the death of Brandi Griffin Jones. . . . Inadequate booking information and criminal history review, poor and confusing medical history reporting, along with known present medical conditions and treatment, and no classification effort all contributed to the unnecessary death of Ms. Griffin Jones."); (Id. at p. 31 ("Nothing was done and as a result of these significant failures, Ms. Griffin Jones died."); (Id. at p. 32 ("None of these safeguards were ordered and thus, Ms. Griffin Jones is dead."); (Id. at p. 33 ("Due to these failures, Ms. Griffin Jones is no longer alive."); (Id. at p. 37 ("Coffee County failed to provide such oversight with regard to Brandi Griffin Jones's health care and detoxification—and as a result, she is dead."); (Id. ("[T]hey did not and as a result they all contributed to her unnecessary death."); (Id. ("Their failures cost Ms. Griffin Jones her life."); (Id. at p. 38 ("With regard to Ms. Griffin Jones, each standard represented is a specific and appalling failure that caused the death of Brandi Nicole Griffin Jones."); (Id. at p. 39 ("This deliberate indifference to Ms. Griffin Jones's health care needs were an inexcusable and devastating failure that was a direct cause of her death."); (Id. at p. 40 ("[N]o one from the Sheriff's Office or South Georgia Correctional Medicine gave this potentially deadly condition any consideration whatsoever and now Brandi is dead."); (Id. at p. 41 ("As a result of all of the aforementioned failures in this report, the life of Brandi Nicole Griffin Jones has unnecessarily and heartbreakingly been ended at the hands of those who had a constitutional, if not moral, obligation to protect her.").

In their Motion, Defendants attacked Mr. Berg's causation opinion and pointed out that "the medical examiner, a trained medical doctor, was unable to determine a cause of death."

(Doc. 69, p. 9.)  Plaintiff did not respond to this specific challenge at all in his Response and Surreply and offered no foundation for Mr. Berg to testify about causation.  It appears that Plaintiff may have abandoned these opinions, as he stipulated that Mr. Berg will not testify as to "medical issues that require specialized medical knowledge and expertise."  (Doc. 85, p. 3.)

Regardless of the scope of Plaintiff's stipulation, Mr. Berg is not qualified to offer an opinion on the cause of Mrs. Jones' death.  As set forth above, "experts may be qualified in various ways.  While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status."  Frazier, 387 F.3d at 1260–61.  Mr. Berg has more than forty-four (44) years' "experience in criminal justice, primarily in the area of corrections."  (Doc. 71-1, p. 14.)  However, Mr. Berg's background and qualifications do not include medical care, treatment, or diagnoses or any other area that would allow him to draw medical conclusions.  As Plaintiff belatedly acknowledges, Mr. Berg cannot proffer any expert opinions on medical issues.  The cause of Mrs. Jones' death is unquestionably one of these medical issues.  Any conclusions regarding the cause of Mrs. Jones' death are the precise type of opinions that are "rooted in medical knowledge and training" that Mr. Berg does not possess. Jones v. Lincoln Elec. Co., 188 F.3d 709, 723–24 (7th Cir. 1999) (holding that district court should have barred non-medical expert material scientist from testifying about medical conclusions); see also Jacob v. Korean Air Lines Co., 606 F. App'x 478, 481 (11th Cir. 2015) ("Although causation is an issue generally left to a jury, the medical causation in this case— which involves technical and scientific issues concerning diabetes and heart disease—falls beyond the scope of a layperson's knowledge and requires competent medical testimony."); Kellner v. NCL (Bahamas), Ltd., No. 15-23002-CIV, 2016 WL 4440510, at *1 (S.D. Fla. Aug. 22, 2016) ("Expert testimony is required to establish medical causation for conditions not readily

observable or susceptible to evaluation by lay persons."); <u>Vaughn v. United States</u>, 542 F. Supp. 2d 1331, 1336 (S.D. Ga. 2008) (holding, in medical malpractice case, that the proximate cause of death was "beyond the keen of laypersons and therefore may only be resolved by expert medical testimony").

Put simply, Mr. Berg is not qualified to testify as to the cause of Mrs. Jones' death.[5] Moreover, Plaintiff has failed to show that Mr. Berg's numerous statements regarding causation are grounded in any reliable principle and methods or are based on sufficient facts and data. Rather, these opinions appear to rest on only the *ipse dixit* of Mr. Berg. Further, allowing Mr. Berg to offer his causation opinions to the jury would not assist but would instead confuse the jury and unfairly prejudice Defendants.

For all of these reasons, as well as those stated above in Section I, the Court **GRANTS** Defendants' Motion to Strike Mr. Berg's opinions regarding causation and bars him from testifying that any actions or omissions caused or contributed to Mrs. Jones' death.

**B.     Mr. Berg's Legal Conclusions**

Mr. Berg frequently states that the Coffee County Sheriff's Office and South Georgia Correctional Medicine violated constitutional obligations owed to Mrs. Jones. For instance, he opines:

> Brandi Nicole Griffin Jones had a constitutional right to be protected from cruel and unusual punishment. She also had the right to due process. Further, she had a right to life and liberty. Unfortunately, while in the custody of the Coffee County Sheriff's Office between July 8, 2015 and July 11, 2015, all of these rights were violated.

---

[5] It does not appear that Mr. Berg is simply restating another expert's conclusions regarding the cause of Mrs. Jones' death or relying upon some medical evidence or fact that obviously establishes the cause of her death. Indeed, the only evidence on this issue that Plaintiff offers in response to the Motion to Strike is the autopsy report wherein the medical examiner opines that the cause of death "is best diagnosed as undetermined." (Doc. 71-1, p. 5.)

(Doc. 71-1, p. 40.) Mr. Berg's legal conclusions do not end there, as his Report is replete with similar statements. (Id. at p. 28 ("A result of this tragic failure and very deliberate indifference is that Ms. Griffin Jones was exposed to cruel and unusual punishment . . . ."); (Id. at p. 29 ("I am certain that the negligence and deliberate indifference reported here will become even more apparent as additional material is produced."); (Id. at p. 34 ("Given the egregious and shocking failures of South Georgia Correctional Medicine and the Coffee County Sheriff's Office to provide the slightest adequate medical, mental and detoxification health care services, it would go without specificity that these authorities would also be negligent . . . ."); (Id. at p. 35 ("[T]he other governing standards are not met as well due to the clear actions of complete and obvious deliberate indifference."); (Id. at p. 36 ("This responsibility is a non-negotiable and non-delegable duty of the Sheriff and his staff."); (Id. at p. 37 ("Coffee County Officials and their health care provider had a constitutional mandate to protect Brandi Griffin Jones and provide her with care, custody and control that was free from any form of cruel and unusual punishment; they did not!"); (Id. ("Failure to do so represents gross negligence, deliberate indifference and reckless disregard for the constitutional rights of the inmates incarcerated within. Administrative failures of this nature create life-threatening dangers that represent negligence at its very worst."); (Id. at p. 39 ("This deliberate indifference to Ms. Griffin Jones's health care needs were [sic] an inexcusable and devastating failure."); (Id. ("Ms. Griffin Jones's condition was known and failure to plan and monitor her needs amounts to an objectively unreasonable custody action."); (Id. at p. 40 ("Between July 8, 2015 and July 11, 2015, Brandi Nicole Griffin Jones's guaranteed Constitutional rights were flagrantly violated by the Coffee County Sheriff's Office and South Georgia Correctional Medicine."); (Id. at p. 41 ("As a result, Brandi Nicole Griffin Jones's constitutional [sic] protection rights were blatantly violated by being exposed to

authoritative actions that can only be viewed as deliberately indifferent, unacceptable, objectively unreasonable, inhumane and cruel and unusual punishment.").

Defendants specifically target Mr. Berg's "sweeping legal conclusions" in their Motion to Strike. (Doc. 69, p. 9.) They cite Eleventh Circuit precedent prohibiting experts from testifying that a defendant was deliberately indifferent. (Id. (citing Omar v. Babcock, 177 F. App'x 59, 63, n.5 (11th Cir. 2006); Campbell v. Sikes, 169 F.3d 1353, 1368 (11th Cir. 1999).) Without addressing these authorities, Plaintiff stood by Berg's legal opinions in his Response. (Doc. 71, p. 1 ("Mr. Berg's opinions and testimony regarding the gross negligence and deliberate indifference of Defendants . . . are admissible because Mr. Berg is an imminently [sic] qualified expert in the field of criminal justice management of correctional facilities.").) However, without any explanation, Plaintiff reversed course in his Surreply. (Doc. 85, p. 3 ("Nor will Mr. Berg render opinions or give testimony regarding legal implications of conduct, such as 'that Defendants were deliberately indifferent.'").)

As Defendants correctly point out, and Plaintiff now apparently stipulates, Mr. Berg cannot testify as to legal conclusions. Estate of Tessier, 402 F.3d at 1112 n.8 (noting "testifying experts may not offer legal conclusions"). Specifically, Mr. Berg cannot offer his numerous statements that Defendants owed various legal duties to Plaintiff and breached those duties. In Omar, the Eleventh Circuit upheld the district court's striking of several paragraphs of an expert's affidavit that contained legal conclusions as to whether the defendants acted with deliberate indifference. 177 F. App'x at 63 n.5. The Court explained an expert cannot "simply recount[] the facts and then offer[] an opinion as to the conclusion which the jury should reach." Id. (citing Montgomery, 898 F.2d at 1541). Further, the expert "was not qualified as an expert

on the state of mind of others", and therefore, could not testify as legal conclusions regarding the defendant's culpable state of mind. Id.

Mr. Berg's legal conclusions must be excluded for the same reasons. "A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law."[6] Montgomery, 898 F.2d at 1541. Moreover, Mr. Berg's legal opinions are largely unsubstantiated by any proffered facts, explanation, or analysis. Thus, Mr. Berg cannot testify that Defendants owed a particular legal duty to Mrs. Jones, that the duty was "non-delegable," or that Defendants breached that duty. These are contentions that should be made in a lawyer's closing arguments, not an expert witness' testimony. Estate of Tessier, 402 F.3d at 1111; Frazier, 387 F.3d at 1262–63.

Plaintiff has failed to show that Mr. Berg's numerous legal conclusions are within his area of expertise, are grounded in reliable principles and methods, or are based on sufficient facts and data. Further, allowing Mr. Berg to offer his legal opinions to the jury would not assist the jury but instead would confuse the jury and unfairly prejudice Defendants. For all of these reasons, as well as those stated above in Section I, the Court **GRANTS** Defendants' Motion to Strike as to Mr. Berg's legal conclusions and opinions, and the Court bars him from testifying to or otherwise offering those opinions.

---

[6]   The Court recognizes that, under Federal Rule of Evidence 704(a), an expert's opinion "is not objectionable just because it embraces an ultimate issue." Nonetheless, courts have consistently excluded expert testimony that a defendant acted with negligence or deliberate indifference, as well as similar opinions. See, e.g., Woods v. Lecureux, 110 F.3d 1215, 1221 (6th Cir. 1997) (excluding deliberate indifference testimony); Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 709 (2d Cir. 1989) (holding that trial court should have excluded expert's testimony that the defendant was negligent); Emp'rs Ins. of Wausau v. Latex Constr. Co., No. 1:01-CV-1909-BBM, 2003 WL 26087498, at *8 (N.D. Ga. Sept. 2, 2003) (excluding portions of expert's testimony which relate to "negligence"); Wells v. Smith, 778 F. Supp. 7, 8 (D. Md. 1991) (excluding testimony as to whether the amount of force used was reasonable under all the circumstances because, though the testimony was "not necessarily barred by Fed. R. Evid. 704(a), expert testimony as to the reasonableness of an officer's action is only admissible to the extent that it will assist the trier of fact to determine a fact in issue or to understand the evidence.").

### C. Mr. Berg's Opinions Regarding Violations of Unwritten Standards of the Corrections Industry

At various points in his Report, Mr. Berg appears to opine that aspects of the care and supervision provided to Mrs. Jones (or alleged lack thereof) violated unwritten standards of the corrections field. The Court distinguishes these opinions from those opinions assessed in Subsection D below regarding certain written standards of the corrections field. As typical with Mr. Berg's conclusions, these opinions and the reasons supporting them are not clearly delineated either in his Report or Plaintiff's briefs.[7] However, it appears that Mr. Berg bases these opinions on his experience in the corrections industry. The Court will assess these opinions, as best as it can decipher them, individually. Except as explained below, Plaintiff has failed to establish a reliable methodology and sufficient facts and data for Mr. Berg's numerous opinions regarding violation of unwritten standards. Rather, like many of Mr. Berg's opinions, these opinions appear to rest primarily in the *ipse dixit* of Mr. Berg. Further, allowing Mr. Berg to offer these opinions to the jury would not assist the jury but instead would confuse the jury and unfairly prejudice Defendants.

### 1. Critique of Nurse Bass' Medical Screening and Evaluation

Initially, Mr. Berg contends that Nurse Tammy N. Bass made errors when completing Mrs. Jones' Medical Staff Receiving and Screening Form and Suicide Prevention Screening Guidelines Form at the initiation of Mrs. Jones' detention. (Doc. 71-1, pp. 27–28.)[8] Specifically, Mr. Berg contends that the information Nurse Bass recorded on these forms

---

[7] Plaintiff states that Mr. Berg will testify as a witness "who has expert knowledge of the applicable state and national standards imposed on correctional facilities such as the Coffee County Jail." (Doc. 85, p. 4.) However, Plaintiff does not explain what those standards are or provide any clarification as to how those standards were violated.

[8] Mr. Berg did not attach these forms to his Report, and Plaintiff has not attached the forms to his Response or Surreply.

conflicts. (Id.) He contends that Mrs. Jones "had a well-known and easily attainable medical history for drug dependence, manic depression and psychiatric disorders" and that Nurse Bass failed to include these conditions on the Suicide Prevention Screening Guidelines Form. (Id.) He also contends that Nurse Bass failed to record "signs of alcohol/drug withdrawal" on the Medical Questionnaire and incorrectly answered the question of whether Mrs. Jones had recently seen a psychiatrist or been in a mental institution. (Id. at p. 28.)

Defendants argue the Court should strike Mr. Berg's critique of Nurse Bass, because the critique "is clearly beyond the scope of Berg's expertise as he is not a medical doctor and his 'qualifications' do not reflect that he has had any training that would make his interpretation of a medical questionnaire superior to that of the average layman or that he is qualified to interpret medical documents." (Doc. 69, p. 7.) Plaintiff fails to respond in any meaningful way to this argument. Indeed, from Plaintiff's stipulation that Mr. Berg will not offer any medical opinions, it appears Plaintiff concedes this point. Plaintiff's lack of response and apparent concession warrant the striking of these opinions.

Moreover, even absent Plaintiff's concession, Mr. Berg cannot espouse expert opinions on Nurse Bass' completion of the intake forms. To the extent that Nurse Bass made medical judgments in filling out these forms, a critique of that medical judgment lies beyond Mr. Berg's expertise. The Court has reviewed Mr. Berg's qualifications listed in his Report, as well as his résumé attached to that Report. (Doc. 71-1, pp. 14–15, 42–61.) While Mr. Berg obviously has many years' experience overseeing correctional facilities, he has no experience working as a physician or nurse or in any other position where he would evaluate the medical symptoms and

needs of an individual or interpret a medical document.[9]  (Id.)  Nowhere in his Report or attached materials does he reveal any experience, training, or knowledge that would qualify him to opine on the propriety of Nurse Bass' evaluation and to critique any medical judgments she made.

To the extent Mr. Berg is contending that Nurse Bass did not make an erroneous medical judgment when filling out the intake forms but instead simply committed clerical errors, his opinion would not be helpful to the jury.  Mr. Berg has not revealed any specialized experience or qualification in detecting such an error, and recognizing such a clerical error would not be outside the knowledge of a layperson.  Rouco, 765 F.2d at 995 (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen"); Lopez v. Allstate Fire & Cas. Ins. Co., No. 14-20654-CIV, 2015 WL 5584898, at *6 (S.D. Fla. Sept. 23, 2015) (excluding expert testimony that insurer made certain clerical errors, because "the jury is perfectly capable of making that factual determination without the assistance of an expert[]").

Moreover, Plaintiff fails to demonstrate that Mr. Berg's criticism of Nurse Bass is based on sufficient facts or data and is the product of reliable principles and method applied to the facts of this case.  Fed. R. Evid. 702.  Specifically, in their Motion to Strike, Defendants contend that the medical documentation in this case does not support Mr. Berg's premise that Mrs. Jones was being treated for the various medical issues that Nurse Bass supposedly failed to record. (Doc. 69, p. 8.)  Plaintiff utterly fails to respond to this challenge in his Response and Surreply.  Thus, to the extent that Mr. Berg opines that Nurse Bass failed to recognize and document medical issues when evaluating Mrs. Jones, Plaintiff has failed to lay the foundation that those medical issues existed, and thus, should have been recognized.

---

[9]  Mr. Berg claims "my experience allows me to assess operational matters involving . . . health/medical assessments."  (Doc. 71-1, p. 15.)  However, it is not clear what he means by "operation matters." Moreover, just because Mr. Berg states he is qualified in a particular task does not make him so qualified.

Plaintiff has failed to show that Mr. Berg is qualified to critique Nurse Bass' medical screening and evaluation and that his critique is the product of reliable principles and methods and sufficient facts or data. Further, allowing Mr. Berg to critique Nurse Bass' efforts would not assist the jury but instead would confuse the jury and unfairly prejudice Defendants. For all of these reasons, as well as those stated above in Section I, the Court **GRANTS** Defendants' Motion to Strike Mr. Berg's critique of Nurse Bass' medical screening and evaluation and bars Mr. Berg from testifying to or otherwise offering those opinions.

### 2. Opinion Regarding Housing and Observation of Mrs. Jones

Mr. Berg also concludes that Mrs. Jones had a "known history of drug use, psychiatric disorders and recent suicidal behaviors; each of which would call for special correctional housing that required constant or very frequent medical and/or security observation." (Doc. 71-1, p. 28.) He contends that Mrs. Jones did not receive such housing and supervision. (Id.)

Defendants argue that this opinion does not fall within Mr. Berg's scope of expertise. Specifically, they contend that "whether there is a need for medical observation requires a determination by a medical professional, which Berg is not." (Doc. 69, p. 8.) It appears Plaintiff does not oppose this argument. Plaintiff does not address this contention at all and does not explain how Mr. Berg is qualified to opine that Mrs. Jones should have received "special" housing with "medical and/or security observation." As explained above, Plaintiff has conceded that Mr. Berg cannot make medical decisions. Plaintiff has not addressed, much less refuted, Defendants' argument that any decision regarding Mrs. Jones' observation "requires a determination by a medical professional." Plaintiff's failure to answer this challenge and establish Mr. Berg's qualification to offer these opinions is sufficient in and of itself to exclude these opinions.

Moreover, even if Plaintiff had shown that Mr. Berg has the requisite experience to opine on what type of housing and observation Mrs. Jones should have received; Plaintiff has not shown how Mr. Berg's experience leads to the conclusion he reached, why that experience is a sufficient basis for the opinion, and how Mr. Berg reliably applied his experience to the facts of Mrs. Jones' case. Frazier, 387 F.3d at 1261. For example, neither Mr. Berg nor Plaintiff relays any past experiences where Mr. Berg has made housing and observation decisions regarding a detainee similar to Mrs. Jones. Further, he does not explain any criteria and factors he applied in making observation decisions in the past and how those criteria and factors apply to the facts of Mrs. Jones' situation. Additionally, Mr. Berg states that he has not received "cell observation logs pertaining to the incarceration of Ms. Griffin Jones." (Doc. 71-1, p. 36.) He states that "[t]hese logs could provide significant information as to how often and how thoroughly Ms. Griffin Jones was observed and evaluated by security and medical staff." (Id.) Without this information, it does not appear that Mr. Berg has reliable facts and data to state that Mrs. Jones' observation was lacking. Additionally, he provides no explanation of what he means by "special housing" or "medical and/or security observation." Thus, his opinion would be of little assistance to the jury.

Additionally, Mr. Berg's opinion regarding Mrs. Jones' observation is premised on the assumption that she had a "known history of drug use, psychiatric disorders and recent suicidal behaviors." (Id.) However, he does not specify, cite, or otherwise explain how he reached this assumption. Defendants attack this deficiency in their Motion to Strike. (Doc. 69, pp. 8–9.) They state the record, including the medical documentation Plaintiff has provided, does not establish that Mrs. Jones suffered from these conditions. (Id. at p. 8.) Defendants then contend that "Berg's discussion of a known history of Mrs. Jones' medical diagnoses, without any factual

support, provides a false premise for his determination that Mrs. Jones needed 'special correctional housing that required constant or very frequent medical and/or security observation.'" (Id. at pp. 8–9.)

Plaintiff does not attempt to refute this argument at all. Rather, in his Response, Plaintiff declines to "go[] into great detail regarding the medicine at issue in this case." (Doc. 71, p. 3.) Plaintiff does not state in either his Response or Surreply that Plaintiff had a "known history of drug use, psychiatric disorders and recent suicidal behaviors", much less provide any factual support for that critical factual premise. As such, Plaintiff has failed to carry his burden to demonstrate that Mr. Berg's opinion was based on sufficient facts or data. Fed. R. Evid. 702(b); Grand Slam Club/Ovis v. Int'l Sheep Hunters Ass'n Found., Inc., No. 2:06-CV-4643-VEH, 2008 WL 11375373, at *4 (N.D. Ala. Jan. 15, 2008) (holding that expert's opinion was "due to be excluded on the basis that it is unreliable because of an unrefuted foundational factual flaw in his underlying assumptions"); In re Durso Supermkts., Inc., 193 B.R. 682, 703 (Bankr. S.D.N.Y. 1996) ("It is the burden of the proponent of an expert's opinion to prove that the underlying assumptions of the experts are true.") (citing In re Joint Eastern & Southern Dist. Asbestos Litig., 774 F. Supp. 113 (S.D.N.Y. 1991), rev'd on other grounds, 52 F.3d 1124 (2d Cir. 1995)). This foundational flaw in Mr. Berg's opinion is not merely an ancillary matter that should only go the weight of his opinion or that could be delved into on cross examination. Rather, Mrs. Jones' alleged condition appears to be a lynchpin of Mr. Berg's opinion regarding what housing and observation she should have received. With Plaintiff having failed to provide support for this central underlying premise, Plaintiff has failed to lay the most basic foundation for the opinion.[10]

---

[10] The Court does not conclude here there is no support in the discovery documents or depositions for the premise that Plaintiff had a "known history of drug use, psychiatric disorders and recent suicidal behaviors." Rather, the Court holds that, if there is such support, Plaintiff has failed to point to the

Plaintiff has not argued, much less demonstrated, that Mr. Berg is qualified to opine on the housing and supervision that Mrs. Jones should have received. Further, Plaintiff has not shown that Mr. Berg's opinions in this area result from reliable principles and methods and are based on sufficient facts and data. For all of these reasons, as well as those stated above in Section I, the Court **GRANTS** Defendants' Motion to Strike Mr. Berg's opinions regarding the housing or supervision that Mrs. Jones should have received. Specifically, the Court bars Mr. Berg from testifying or otherwise proffering that Mrs. Jones should have received specialized housing with constant or very frequent observation.

### 3.    Opinions Regarding Treatment of Health Risks

Mr. Berg further opines that the Sheriff's Office and South Georgia Correctional Medicine failed to properly treat Mrs. Jones' "known health risks" of detoxification, psychiatric disorders, and suicidal tendencies. (Doc. 71-1, p. 29.) As specific failures in this regard, Mr. Berg points to the failure to request medical and pharmacy records, failure to provide appropriate medications, and failure to provide additional medical evaluation and treatment, despite Mrs. Jones exhibiting signs of withdrawal from her drug use and prescription medication. (Id.) The Court excludes these opinions for many of the same reasons that it excludes Mr. Berg's opinions regarding the housing and observation of Mrs. Jones.

First, Plaintiff has failed to establish Mr. Berg's qualifications for offering these opinions. Again, Defendants challenge Mr. Berg's ability to opine on matters of medical judgment, and Plaintiff declines to answer that challenge. Rather, Plaintiff stipulates that Mr. Berg will not offer opinions "as to medical issues that require specialized medical knowledge and expertise." (Doc. 85, p. 3.) Thus, it appears that Plaintiff has abandoned any effort to introduce these

---

support in response to Defendants' Motion to Strike, and it is not the Court's obligation to sift through the record in search of it.

opinions. Further, Plaintiff maintains that Mr. Berg is "an imminently [sic] qualified expert in the field of criminal justice management of correctional facilities" and that he can testify "as one who has expert knowledge of the applicable state and national standards imposed on correctional facilities such as the Coffee County Jail." (Doc. 85, pp. 1, 4.) Plaintiff fails to explain how Mr. Berg's opinions regarding the treatment of detoxification, psychiatric disorders, suicidal tendencies, and withdrawal from medication fall within this purported area of expertise. Plaintiff does not argue that Mr. Berg has any specialized knowledge, training, or experience providing any medical treatment, much less treating detoxification, psychiatric disorders, suicidal tendencies, and withdrawal from medication.

Second, even if Mr. Berg had experience treating detoxification, psychiatric disorders, suicidal tendencies, and the withdrawal from medication, neither he nor Plaintiff has shown how his experience leads to the conclusion he reached, why that experience is a sufficient basis for his opinion regarding the treatment of Mrs. Jones' condition, and how Mr. Berg reliably applied his experience to the facts of Mrs. Jones' case. Frazier, 387 F.3d at 1261. For example, Mr. Berg does not relay instances during his career where he made decisions as to how to respond to these conditions, what facts or criteria he considered when making such decisions, how those considerations would apply to Mrs. Jones' case, or how he implemented the actions he contends Coffee County Jail and South Georgia Correctional Medicine should have taken as to Mrs. Jones. Thus, these opinions, like much of Mr. Berg's Report, are supported only by the *ipse dixit* of the expert.

Additionally, as with Mr. Berg's opinion regarding observation, Plaintiff has failed to demonstrate that Mr. Berg's opinions regarding the disregard of Mrs. Jones' known health risks are grounded in reliable facts or data. See Fed. R. Evid. 702(b); Grand Slam Club/Ovis, 2008

WL 11375373, at *4; Durso Supermkts., 193 B.R. at 703.  Again, the foundational premise for Mr. Berg's opinion is that Mrs. Jones was suffering from the known health risks that Coffee County Jail and South Georgia Correctional Medicine disregarded.  In their Motion, Defendants challenge whether the medical record supported this premise.  (Doc. 69, p. 8.)  Plaintiff does not address this challenge at all in his Response or Surreply.  Plaintiff does not explain why Mr. Berg correctly presumed that Mrs. Jones suffered from detoxification, psychiatric disorders, suicidal tendencies, and medical withdrawal.  Thus, Plaintiff has failed to answer Defendants' challenge to a critical premise of Mr. Berg's opinion.

Plaintiff has not argued, much less demonstrated, that Mr. Berg is qualified to opine on the treatment that Mrs. Jones should have received for her health risks.  Further, Plaintiff has not shown that Mr. Berg's opinions in this area result from reliable principles and methods and are based on sufficient facts and data.  It would not benefit the jury to hear these unsupported conclusory opinions.  For all of these reasons, as well as those stated above in Section I, the Court **GRANTS** Defendants' Motion to Strike Mr. Berg's opinions that the Coffee County Sheriff's Office and South Georgia Correctional Medicine disregarded Mrs. Jones' known health risks, and the Court bars Mr. Berg from testifying to or otherwise offering those opinions.

### 4.    Opinions Regarding Classification Practices

Mr. Berg states that the Coffee County Sheriff's Office failed to implement a "classification process" as to Mrs. Jones.  (Doc. 71-1, p. 29.)  He states that "nowhere in the materials surrounding the Griffin Jones matter[] can I find that the Coffee County Sheriff's Offices [sic] uses any traditional classification practices that could have afforded Ms. Griffin Jones the specialized care and specialized housing which she so desperately needed."  (Id.)  Mr. Berg explains that "[a]cceptable correctional classification systems incorporate all known facts

regarding a detainee such as medical, criminal and behavioral (past and present), to formulate the most applicable housing plan possible to ensure the safety of the inmate and all others concerned." (Id.) In Mr. Berg's opinion, "no classification process was ever incorporated in the Griffin Jones incarceration plan." (Id.) Later in his Report, Mr. Berg provides this explanation of the classification process:

> Classification must be the center point of all inmate activities and status decisions. Trained classification personnel ensure that all pertinent information is consolidated into a totally encompassing custody plan. This information is acquired from intake information, medical screening, criminal and medical histories and security/observation needs required. As new information is accumulated and received pertaining to an inmate, it must be proved to the Classification Unit prior to anything happening with the inmate involved.

(Id. at p. 38.)

Unlike his other opinions, Mr. Berg provides sufficient foundation for him to testify, in some respects, as to the classification process. While Plaintiff has not specifically addressed Mr. Berg's classification opinions in his briefs, Mr. Berg establishes that he is qualified to testify in this area and that some of his opinions are based in reliable methodology. It is evident from Mr. Berg's résumé and list of credentials that his experience includes development and oversight of classification systems in correctional facilities. (Id. at pp. 14–15, 42–55.) Further, from his experience, he has developed the knowledge of what an "[a]cceptable correctional classification system" entails. (Id. at pp. 29, 38.) He applied that experience and knowledge to the facts of this case. In particular, Mr. Berg reviewed the case specific materials and determined that Mrs. Jones did not undergo any classification process. (Id. at p. 29.) Testimony as to what a classification process traditionally entails and whether Mrs. Jones received that process would assist the jury in understanding a matter outside of a layperson's knowledge. See Henderson, 2014 WL 2761206, at *3 (corrections expert's opinions would be helpful to a prospective jury because they would

assist the jury in understanding relevant standards in the corrections industry and how standards could be implemented in jails).

However, Mr. Berg will not be permitted to stray from describing what a classification process review entails and whether that process was implemented as to Mrs. Jones. Specifically, Mr. Berg will not be permitted to testify as to what the outcome of Mrs. Jones' classification process would have been. Thus, he cannot testify the classification process would "have afforded Ms. Griffin Jones the specialized care and specialized housing which she so desperately needed." (Doc. 71-1, p. 29.) For the reasons stated in Section I and in Subsections II(C)(2) and II(C)(3), Plaintiff has failed to lay the proper foundation for Mr. Berg to testify as to deficiencies in Mrs. Jones' observation and medical treatment.[11]

Additionally, Mr. Berg cannot testify that "nowhere in the materials surrounding the Griffin Jones matter[] can I find that the Coffee County Sheriff's Offices [sic] uses any traditional classification practices." (Id.) This amounts to an opinion that the Coffee County Sheriff's Office never uses a classification process and has a policy and practice of not doing so, not just that the process was not used in Mrs. Jones' case. Mr. Berg does not provide a reliable methodology or adequate factual support for this opinion. While Mr. Berg states that he has not located any evidence that the Sheriff's Office uses a classification process, he does not explain where he looked for such evidence. Mr. Berg's list of materials that he reviewed only includes materials as to what occurred in Mrs. Jones' case specifically and does not include any materials regarding the policies, procedures, or overall practices of the Sheriff's Office. (Id. at pp. 16–17.) Further, Mr. Berg's conclusion that the Coffee County Sheriff's Office did not implement a

---

[11]  For instance, while it appears Mr. Berg has experience developing and overseeing classification systems, Plaintiff has not shown that he has any experience making classification decisions. Further, even if Mr. Berg does have such experience, he has not shown how he has reliably applied that experience to the facts and data from this case to reach conclusions regarding the care and housing that Mrs. Jones should have received.

classification process in Mrs. Jones' specific case is an insufficient basis for his opinion that the Coffee County Sheriff's Office does not use a classification process generally.

Indeed, throughout his Report, Mr. Berg states that he has not reviewed any policies or procedures of the Coffee County Sheriff's Office. (Id. at pp. 36, 38, 40.) Berg makes the unsupported intellectual leap that, because he had not reviewed the policies, the policies must be inadequate or nonexistent. (Id.) However, the Sheriff's Office's policies had been produced in discovery. In fact, Plaintiff attached some of the policies to his Response and stated in his Surreply that the Coffee County Sheriff's Office's policies and procedures were based on the "Georgia Standards." (Id. at pp. 8–12; Doc. 85, pp. 3–4.) Mr. Berg approvingly cites the Georgia Standards for the classification measures the Sheriff's Office should have employed. (Doc. 71-1, p. 31.) This evidence flatly contradicts Mr. Berg's opinion that "nowhere in the materials surrounding the Griffin Jones matter" is there evidence that the Coffee County Sheriff's Office has implemented a classification process.

For these reasons as well as those set forth in Section I and the preceding subsections, the Court **DENIES in part** and **GRANTS in part** Defendants' Motion to Strike Mr. Berg's opinions regarding the classification process. Mr. Berg will be permitted to opine that "acceptable correctional classification systems incorporate all known facts regarding a detainee such as medical, criminal and behavioral (past and present), to formulate the most applicable housing plan possible to ensure the safety of the inmate and all others concerned." (Id.) He may also opine that:

> Classification must be the center point of all inmate activities and status decisions. Trained classification personnel ensure that all pertinent information is consolidated into a totally encompassing custody plan. This information is acquired from intake information, medical screening, criminal and medical histories and security/observation needs required. As new information is

accumulated and received pertaining to an inmate, it must be proved to the Classification Unit prior to anything happening with the inmate involved.

(Id. at p. 38.)  Further, Mr. Berg may testify that "no classification process was ever incorporated in the Griffin Jones incarceration plan."  (Id. at p. 29.)  The Court **DENIES** Defendants' Motion to Strike these opinions.

However, for the reasons stated above and in Section I and in the preceding Subsections, the Court **GRANTS** Defendants' Motion to Strike Mr. Berg's other opinions regarding the classification process.  Specifically, Mr. Berg may not testify that the classification process would "have afforded Ms. Griffin Jones the specialized care and specialized housing which she so desperately needed", and he cannot opine that "nowhere in the materials surrounding the Griffin Jones matter[] can I find that the Coffee County Sheriff's Offices [sic] uses any traditional classification practices."

**D.      Mr. Berg's Opinions Regarding Violations of Written Standards of the Corrections Industry**

Mr. Berg opines that the Coffee County Sheriff's Office and South Georgia Correctional Medicine violated a number of written industry standards in the classification, housing, and medical care provided to Mrs. Jones.  (Id. at pp. 30–34.)  In support of these opinions as to the Coffee County Sheriff's Office, Mr. Berg first cites to various provisions of the Georgia Standard for Adult Pretrial Detention Facilities and the American Correctional Association Core Jail Standards.  (Id.)  He also concludes that South Georgia Correctional Medicine, as well as the Sheriff's Office, violated various sections of the Provisions of the National Commission on Correctional Health Care, 2014 Standards for Health Services in Jails.  (Id. at pp. 34–35.)  Lastly, he argues that "Coffee County gave NO consideration to the provisions of the American Bar

Associations Standards for Criminal Justice, Third Edition, Treatment of Prisoners." (Id. at p. 35.)

Neither Plaintiff nor Mr. Berg has made any effort to lay the foundation for the admission of these opinions. The Court has been left to guess as to what these standards actually provide and how Mr. Berg concluded that Defendants violated them. Mr. Berg supports these opinions by doing nothing more than listing various sections from what appears to be the publications' tables of contents and then making conclusory statements that the standards were violated as to Mrs. Jones. He does not discuss the written standards, provide any text from any of the standards, or summarize what the standards actually provide. Thus, Mr. Berg leaves the Court entirely uninformed as to the content of these written standards.

Moreover, Mr. Berg provides little, if any, description of how any of the Defendants violated the standards. Rather, he relies upon conclusory statements. For instance, after listing sections regarding "Administration and Management" from American Correctional Association Core Jail Standards, Mr. Berg baldly opines, "Given the tragic death of Brandi Griffin Jones, it is factually obvious that all core standards involving staff development and training were insufficient to protect the lives of the inmate detainees within the Coffee County Jail." (Id. at p. 34.) Despite the "factual obvious[ness]," Mr. Berg provides no facts in support of his conclusion.

Defendants point out the insufficient foundation underlying these opinions in their Motion. (Doc. 69, p. 11 ("[Mr. Berg] simply concludes that the Coffee County Sheriff and South Georgia Correctional Medicine violated all of the listed policies, without actually discussing any of them.").) Once again, Plaintiff failed to respond to Defendants' challenge. Plaintiff did not attach, quote, or describe any of the written standards that Mr. Berg contends Defendants

violated.  Further, Plaintiff failed to explain in any manner how Mr. Berg applied these written standards to the facts of Mrs. Jones' detention.  See Trammell v. Paxton, No. 2:06-CV-193, 2008 WL 7514367, at *7 (N.D. Ga. Sept. 29, 2008), aff'd, 322 F. App'x 907 (11th Cir. 2009) (excluding corrections expert's opinions because, "[t]hough he uses model administration policies promulgated by the American Correction Association in his consulting work, there is no indication that he applied those policies to the facts at issue.").  Thus, once again, Plaintiff has foregone the opportunity to illuminate Mr. Berg's opinions and has left the Court in the dark as to how Mr. Berg reached his opinions.  These failures warrant the exclusion of all of Mr. Berg's opinions regarding written standards.

Additionally, many of Mr. Berg's conclusions suffer the same deficiencies as his opinions discussed above in Subsection II(C) and below in Subsection II(E).  Several of the written standards Mr. Berg cites appear to fall outside of what Plaintiff agrees is Mr. Berg's area of expertise.  For instance, Mr. Berg cites to standards labeled "Medical and Health Care," "Health Screens," "Patient Care and Treatment," and "Health Care."  (Doc. 71-1, pp. 34–36.) His opinions regarding these standards would delve into conclusions regarding Mrs. Jones' medical conditions and what treatment she should have received for her medical needs. (See, e.g., Id. at p. 31 (opining that "medical and health care" standard was breached, because "no medical plan was developed, . . . no medications were provided, . . . no detoxification effort was made, . . . no appropriate referrals were initiated . . . ."); (Id. at p. 33 (opining that various medical standards were breached, because "[a]s has been elaborated on in prior sections of this report, Coffee County and their medical provider have failed in all of the above Core Standards as it pertains to the care provided Brandi Griffin Jones."); (Id. at p. 34 (opining that "disabled inmates" standard was breached, because "Ms. Griffin Jones was indeed an inmate with multiple

medical and mental disabilities and she was not protected against the known dangers that were certain to occur."). Mr. Berg does not possess the qualifications to testify as to these opinions, and Plaintiff has stipulated that Mr. Berg will not offer opinions on medical matters. Plaintiff cannot make an end run around this stipulation by allowing Mr. Berg to opine on various written policies regarding medical treatment.

Further, Mr. Berg's opinions that the Coffee County Sheriff's Office violated written standards in the screening, housing, observation, and treatment of Mrs. Jones must be excluded for the same reasons the Court struck Mr. Berg's opinions that the Sheriff's Office violated unwritten standards in these areas. Again, Plaintiff has failed to explain how Mr. Berg's experience leads to the conclusion he reached in these areas, why that experience is a sufficient basis for his opinions, and how Mr. Berg reliably applied his experience to the actual facts of Mrs. Jones' case to reach these conclusions. <u>Frazier</u>, 387 F.3d at 1261.

Moreover, Mr. Berg's opinions regarding the violation of written standards lack the same basis in reliable facts or data as his opinions regarding unwritten standards. Specifically, these opinions are largely based on the premise that Mrs. Jones suffered from various "well-known" medical conditions. (<u>See, e.g.</u>, Doc. 71-1, p. 31 (opining that standard on "special housing" was violated, because "it is sadly apparent that no consideration was given to Ms. Griffin Jones's extremely serious and well-known medical issues"); (<u>Id.</u> at p. 32 (opining that standard on "security, supervision, and surveillance" was violated, because "[f]or individuals suffering from conditions such as Ms. Griffin Jones was, continuous or close observation is essential."). As explained above, despite a challenge from Defendants, Plaintiff has not produced any evidence that Mrs. Jones suffered from these conditions and that they were "well-known." Thus, Plaintiff has failed to provide any support for a foundational premise of Mr. Berg's opinions.

As explained above, Mr. Berg can provide limited testimony as to unwritten standards for the classification process. He can describe what a proper classification process should entail based on his experience, and he may opine that Mrs. Jones did not undergo a classification process in accordance with that standard. However, Mr. Berg provides no such basis for his opinions regarding written standards on classification. In his Report, Mr. Berg cites to written standards with the word "classification" in the title. (Doc. 71-1, pp. 30–31, 32, 35.) However, he does not attach these standards, summarize the requirements of these standards, or describe the standards at all. Plaintiff does not remedy this deficiency in his Response or Surreply. With Plaintiff having not provided any evidence of even what the written classifications standards are, he has failed to lay a proper foundation for Mr. Berg to opine that Defendants violated those standards.

For all of these reasons, as well as those set forth in the preceding Section and Subsections, the Court **GRANTS** Defendants' Motion to Strike Mr. Berg's opinions that Defendants violated any written standards of the corrections industry.

E.     **Mr. Berg's Opinions Regarding Inadequate Supervision, Failure to Train, and Deficient Policies**

Mr. Berg faults unnamed members of the administration of the Coffee County Sheriff's Office and South Georgia Correctional Medicine for failures in Mrs. Jones' supervision and treatment. (Id. at pp. 37–39.) He opines that "Coffee County officials, at all levels, should have been well aware of what was occurring with Brandi Nicole Griffin Jones regarding her medical conditions, mental health issues, medications as well as withdrawal and detoxification needs. It is apparent that they were not and Ms. Griffin Jones died in their custody." (Id. at p. 36.) Mr. Berg states the Coffee County Sheriff Office's administration failed to adequately supervise the Office's employees, as well as the actions of South Georgia Correctional Medicine. (Id. at

p. 38.)  Further, Mr. Berg opines that the Sheriff's Office failed to train its staff and that it failed to develop and implement adequate policies.  (Id. at p. 34 ("[I]t is factually obvious that all core standards involving staff development and training were insufficient to protect the lives of the inmate detainees within the Coffee County Jail."); (Id. at p. 38 ("Also missing in the case of Brandi Griffin Jones is specific and comprehensive training and policy development."); (Id. at p. 39 ("The Coffee County and South Georgia Correctional Medicine's failure to train is just as significant as their failure to supervise."); (Id. at p. 40 ("Clear and concise policy and procedures, although not provided by either the County or the health care provider, apparently had been replaced by unacceptable and dangerous customs and practices . . . .  Further, training was evidently completely inadequate at all levels of personnel for the Sheriff's Office and South Georgia Correctional Medicine.").

Supervising a detention facility, training employees at the facility, and developing policies regarding the operation of the facility all fall within Mr. Berg's area of expertise.  If Mr. Berg received sufficient factual materials regarding the operations of a detention facility, reviewed those materials, and then applied his years of experience to that review, he no doubt could render opinions about the supervision, training, and policies within that facility.  However, Plaintiff has failed to show that is what occurred in this case.  Rather, Mr. Berg's opinion regarding supervisory liability in this case essentially boils down to the following: Mrs. Jones died; ergo, mistakes were made by jail employees; ergo, the employees' supervisors made mistakes.

Mr. Berg claims that supervisors should have been "well aware of what was occurring" with Mrs. Jones' medical condition.  However, once again, neither he nor Plaintiff provides any evidence of Mrs. Jones' actual medical condition.  Furthermore, Mr. Berg provides no factual

details for the conclusory allegation that unnamed supervisors should have all been aware of a detainee's medical condition. For instance, Mr. Berg does not explain who should have made the supervisors aware of Mrs. Jones' condition, how they should have been notified, or when they should have been notified. Further, while Plaintiff relies upon Mr. Berg's experience to support his opinions, neither Mr. Berg nor Plaintiff explains how that experience led to his conclusion. For instance, Mr. Berg does not relay how he and his fellow corrections supervisors stayed apprised of detainees' medical conditions during his career and how that course of conduct differed from what the administration of the Coffee County Sheriff's Office did in this case. Additionally, it does not appear that Mr. Berg has any knowledge of how the Sherriff's Office administration actually supervised the medical care at the Jail. The case specific materials Mr. Berg reviewed and listed in his Report do not include any materials on this subject. Plaintiff provides no factual support for Mr. Berg's opinion on this topic in either of his briefs. Thus, it does not appear that Mr. Berg conducted any investigation into how the Sheriff's Office's administration supervises the medical care of detainees before critiquing that supervision. For all of these reasons, Plaintiff has failed to show that Mr. Berg's opinions regarding supervision are the product of reliable principles and methods and are based on sufficient facts or data.

Likewise, Mr. Berg and Plaintiff provide no reliable methodology or factual basis for Mr. Berg's opinion that the Coffee County Sheriff's Office failed to train the Jail's staff. Again, Mr. Berg fails to connect his work experience with the training that was supplied by the Coffee County Sheriff's Office. For example, he does not compare the training practices that he has implemented or seen in his career with the training that was done at the Coffee County Jail. Indeed, he does not offer any specifics of how employees at the Coffee County Jail should have been trained differently. Trammell, 2008 WL 7514367, at *7 (striking corrections expert opinion

because "[h]e concludes that the training provided to the deputies at [detention center] was constitutionally insufficient but offers no opinion on what other training was necessary or the effect of different or additional training."). It appears that Mr. Berg could not opine as to how the Sheriff's Office could have trained Jail employees differently, because he is entirely ignorant of how those employees were actually trained. In his Report, Mr. Berg does not betray any knowledge whatsoever of the Sheriff's Offices training policies or practices. His list of reviewed materials does not include any training logs, training policies, or any other materials that would evidence what training the employees received or how frequently they were trained. (See Doc. 71-1, pp. 16–17.) Despite his ignorance of the training that occurred at any level of the Sheriff's Office, Mr. Berg nonetheless proposes to come into this Court and testify under oath that the training was "completely inadequate at all levels of personnel for the Sheriff's Office." (Id. at p. 40); (See also Id. at p. 30 ("[I]t is obvious that the Sheriff's Office had failed to adequately train their staff."); (Id. at p. 38 ("Coffee County Officials failed to train their staff, and that of their healthcare provider . . . ."). This is a stretch too far for even the most audacious of expert witnesses.

Remarkably, Mr. Berg's proposed testimony that the Sheriff's Office administration failed to implement adequate policies is even more brazen. Mr. Berg admits throughout his Report that he has not even seen the Sheriff's Office's policies. (Doc. 71-1, pp. 36, 38, 40.)[12] Indeed, in his Surreply, Plaintiff "stipulates that Berg did not initially review the Coffee County Jail Policies and Procedures in forming his initial opinions." (Doc. 85, p. 3.) This admitted

---

[12] Mr. Berg opines that Defendants nefariously refused to produce the Sheriff's Office's policies. (Doc. 71-1, p. 38 ("This resistance to provide such documentation would make any intelligent correctional practitioner wonder what there is to conceal.").) However, as Plaintiff admits in his Response and Surreply, Defendants actually produced these documents in discovery. Plaintiff even attached a portion of the policies to his Response. (Id. at pp. 8–12.) Thus, once again, a disconnect exists between Mr. Berg's opinion and the facts of this case.

ignorance does not stop Mr. Berg from repeatedly opining that the policies were inadequate or did not exist. (See, e.g., Doc. 71-1, p. 30 ("The factual events surrounding the Griffin Jones incident lend one to believe that no policies and procedures were in place that would have directed the proper handling of Brandi Griffin Jones."); (Id. at p. 37 ("[H]ad policies and procedures been developed and clearly written, these same employees would have had specific and safe guidelines regarding administering to inmates that had mental health issues or were detoxing or in withdrawals. Here too, Coffee County and their healthcare provider failed."); (Id. at p. 38 ("Also missing in the case of Brandi Griffin Jones is specific and comprehensive training and policy development."); (Id. at p. 40 ("Clear and concise policy and procedures, although not provided by either the County or the health care provider, apparently had been replaced by unacceptable and dangerous customs and practices.").

As Plaintiff readily admits in his Response and Surreply, the Sheriff's Office did have policies, and those policies were produced by Defendants in discovery. (Doc. 85, pp. 3–4.) Because Mr. Berg has not seen those policies, much less reviewed the policies and applied his experience to reach conclusions regarding them, he obviously cannot testify about those policies and cannot opine that the policies were inadequate. Moreover, according to Plaintiff, the "Coffee County Jail Adult Detention Facility Policy and Procedure Manual" was "based on the same 'Georgia Standards Reference' utilized by Mr. Berg in formulating his opinions." (Id.) Thus, by Plaintiff's own admission, the Coffee County Sheriff's Office actually implemented the same policies that Mr. Berg contends that a detention facility should use.

Plaintiff has failed to provide an adequate foundation to admit Mr. Berg's opinions regarding supervision, training, and policy development. Plaintiff has not shown that Mr. Berg's opinions in this area result from reliable principles and methods and are based on sufficient facts

and data. It would not benefit the jury to hear Mr. Berg's unsupported conclusory opinions, and admission of these opinions would unfairly prejudice Defendants. For all of these reasons, as well as those stated above in Section I, the Court **GRANTS** Defendants' Motion to Strike Mr. Berg's opinions regarding supervision, training, and policy development.

## CONCLUSION

For the reasons and manner stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Strike. Except as specifically stated above, Plaintiff shall not be permitted to introduce or rely upon Mr. Berg's testimony and opinions.

**SO ORDERED**, this 6th day of June, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA